# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | Chapter 11 |
| § | | |
| DANA BRENTON SIMPSON, § | | Case No. 24-42912 |
| § | | |
| Debtor. § | | |
| § | | |
| LRK-96 LLC, § | | |
| § | | |
| Plaintiff, § | | |
| § | | Adv. Proc. No. 25-_____ |
| v. § | | |
| § | | |
| DANA BRENTON SIMPSON, § | | |
| § | | |
| Defendant. § | | |

## COMPLAINT

Plaintiff LRK-96 LLC ("LRK" or "Plaintiff") hereby files this Complaint (the "Complaint") complaining of Defendant-Debtor Dana Brenton Simpson. In support thereof, Plaintiff respectfully shows the Court as follows:

### I.   JURISDICTION AND VENUE

1. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. § 1409.

2. Plaintiff hereby consents to this Court's entry of final orders and judgment in connection with this Adversary Proceeding.

## II.    PARTIES

3.    Plaintiff LRK is a Texas limited liability company with its principal place of business located in Tarrant County, Texas.

4.    Debtor-Defendant Dana Brenton Simpson ("Simpson," "Defendant," or "Debtor") is a resident of Denton County. He may be served at his residence located at 2621 Huntly Lane, Flower Mound, Texas 75022.

## III.    FACTUAL BACKGROUND

5.    Prepetition, the Debtor obtained money through fraud from Kurt Knapton ("Mr. Knapton") by eliciting loans and investments in two entities he created: Click Vision Group LLC ("CVG") and Acuity Advisors LLC ("Acuity").

6.    As a result, in 2021 Mr. Knapton commenced an arbitration proceeding against the Debtor, CVG, and Acuity (collectively, the "Respondents") before the American Arbitration Association numbered 01-21-0002-2315. Knapton and Respondents later entered into an Agreed Arbitration Consent Award the Agreed Arbitration Consent Award in connection with a settlement agreement between the parties. A copy of the settlement agreement with the Agreed Arbitration Consent Award is attached hereto as "**Exhibit A**." The arbitrator then signed and entered a Consent Award (the "Consent Award") on July 21, 2022. A true and correct copy of the signed Consent Award is attached hereto as "**Exhibit B**." The Consent Award attaches and incorporates the Agreed Arbitration Consent Award, stating that it is "ma[d]e a part hereof for all purposes."

7.    Pursuant to the Consent Award, the Arbitrator ordered that Mr. Knapton should have and recover from Respondents, jointly and severally, actual damages in the amount of $850,000 for civil fraud and concerted-misconduct estoppel committed by the Respondents against Mr. Knapton, plus post-judgment interest at the rate of 5%, compounded annually, until all

amounts are paid in full. Pursuant to Simpson's express agreement, the Consent Award is nondischargeable.

8. Simpson failed to comply with the settlement agreement, so on August 30, 2022, Mr. Knapton filed his *Application to Confirm Arbitration Award* in the 141st judicial district court of Tarrant County, Texas, Cause No. 141-335985-22 (the "State Court")[1].

9. On or about September 26, 2022, the Debtor filed a denial of the *Application to Confirm Arbitration Award.*

10. On or about October 26, 2022, Mr. Knapton's *Application to Confirm Arbitration Award* was granted, confirming the Consent Award over the denial and objection of Simpson. The State Court initially signed the Final Judgment against Respondents that same day.

11. On October 31, 2022, the State Court signed a Corrected Final Judgment (the "Final Judgment").[2] A true and correct copy of the Final Judgment is attached hereto as "**Exhibit C.**" The Final Judgment was abstracted in Denton County.

12. Respondents, including CVG and Acuity, refused to pay the judgment. Mr. Knapton therefore conducted initial asset and judgment-collection discovery against Respondents. The Debtor committed misconduct and discovery abuse by failing to answer discovery, including by asserting frivolous objections to discovery, lying in interrogatory answers, producing fabricated documents, and failing to appear for his deposition twice.

13. Despite the Debtor's discovery misconduct, Mr. Knapton ultimately learned through discovery from nonparties that the Debtor improperly received funds directly from Acuity to purchase a residence on May 18, 2022 in Denton County. The residence is located at 2621

---

[1] The case was ultimately transferred to the 48th district court and, after a severance due to Acuity's bankruptcy filing, was assigned cause number 048-344226-23.
[2] The Final Judgment was corrected to include "joint and several liability" language as provided for in the Consent Award.

Huntly Lane, Flower Mound, Denton County, Texas (the "Property"). The Debtor was the alleged record owner of the Property. Mr. Knapton filed a lis pendens on the Property.

14. Records obtained from National Title Group, on May 17, 2022, and PNC Bank show that the Debtor caused Acuity to transfer $18,000.00 (via a PNC Bank cashier's check) and $985,000.12 of funds in Acuity's PNC Bank account directly to National Title Group to purchase the Property on Debtor's behalf (collectively, the "Acuity Transfers"). These transfers were made after the arbitration proceeding was commenced against the Debtor, Acuity, and CVG, and only approximately two months before the parties entered into the settlement and Consent Award. True and correct copies of the records from National Title Group showing this transfer are attached hereto as "**Exhibit D.**"

15. At the time of the transfer, Acuity and CVG had no business operations and had substantial debts.

16. In the state court proceeding, to conceal the true source of the funds from Acuity, the Debtor lied in interrogatory answers and produced fabricated documents attempting to show that the funds came from insurance proceeds from Metropolitan Life Insurance Company ("Metlife") pertaining to life insurance on the Debtor's father. This was false. In response to subpoenas, National Title Group produced records revealing that the funds were directly paid by Acuity to National Title Group. Metlife responded to its subpoena stating that it could not locate a life insurance policy in favor of the Debtor or records related to any payment being made to the National Title Group.

17. On July 21, 2023, Acuity commenced a voluntary chapter 7 bankruptcy case in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The case was assigned case number 23-42106. The Debtor signed Acuity's voluntary petition as a member,

and the Debtor testified that Acuity owned CVG's membership interests. Roddrick B. Newhouse was appointed as the Chapter 7 Trustee (the "Acuity Trustee") for Acuity's bankruptcy estate (the "Acuity Estate").

18. Acuity's Schedules listed $0 in assets and $2,954,214.06 in claims.

19. The Debtor also signed Acuity's Statement of Financial Affairs. The Statement of Financial Affairs states that Acuity had no revenue for the period from 2021 through the July 21, 2023 petition date. The Statement of Financial Affairs states that no transfers of Acuity's property were made outside the ordinary course of business for the two years preceding the July 21, 2023 petition date.

20. On November 18, 2023, the Acuity Trustee filed a *Motion to Sell and Convery Certain Claims of the Estate Free and Clear of All Liens, Claims, and Encumbrances* [Acuity Dkt. 22] (the "Motion to Sell"), seeking to sell all assets and claims of Acuity and its estate to Mr. Knapton and/or his assignees free and clear of all liens, claims, and encumbrances.

21. On February 13, 2024, the bankruptcy court entered the *Order Granting Motion to Sell Certain Claims of the Estate Free and Clear of All Liens, Claims, and Encumbrances* [Acuity Dkt. 25] (the "Sale Order") granting the Motion to Sell and authorizing the sale all of Acuity's assets and claims to Mr. Knapton or his assignee, including LRK, for the purchase price of $12,500. Pursuant to the Sale Order, the sale was made free and clear of all liens, claims, encumbrances, and other interests of any kind. A true and correct copy of the Sale Order is attached hereto as "**Exhibit E**."

22. In accordance with the terms of the sale, the Acuity Trustee sold all of Acuity's assets and claims to LRK as Mr. Knapton's assignee. The sale was consummated through a bill of sale. All of the Acuity Estate's interest in Click Vision Group, LLC was sold and assigned to BEK-

98, LLC pursuant to a separate bill of sale. True and correct copies of the Bills of Sale to LRK and BEK are attached hereto as "**Exhibit F**."

23. Among the assets sold to LRK were all claims, causes of action, and remedies that the Acuity Estate has or may have against the Debtor, including but not limited to claims for fraud, fraudulent transfer, breach of fiduciary duty, and constructive trust. Under the sale, LRK also purchased from the Acuity Estate "all rights, claims, ownership, title, or interest in any property or assets (real, personal, and intangible) that the estate has or may have that is or was under the possession, custody, control, ownership, or title (legal or equitable) of Dana Simpson aka Brent Simpson."[3]

24. On December 2, 2024 (the "Petition Date"), Simpson commenced the above-captioned bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

25. On February 10, 2025, LRK filed Proof of Claim Number 6 in the amount of $1,003,000.12 based on Simpson's wrongful conduct in making the Acuity Transfers to purchase the Property.

### IV. CAUSES OF ACTION

A. **Count 1 – Trespass to Title – LRK Holds Equitable Title in the Property.**

26. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

27. LRK, as Acuity's assignee, holds rightful equitable title to the Property in an amount no less than $1,003,000.12.

---

[3] Sale Order, p. 8 of 8.

28.  "[A] plaintiff in a trespass to try title suit may recover on the strength of an equitable title as well as a legal one." *Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). "Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract. Upon such performance, he becomes vested with an equitable title to the property which is sufficient to allow him to maintain his action in trespass to try title." *Id.* (citing *White v. Hughs*, 867 S.W.2d 846, 849 (Tex. App.—Texarkana 1993, no writ)).

29.  "As courts recognize in the trust context, the holders of equitable title to property are considered the real owners, and the trustee vested with legal title holds [the property] for the benefit of the equitable-title holder." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021) (citing *Bradley v. Shaffer*, 535 S.W.3d 242, 248 (Tex. App.—Eastland 2017, no pet.)).

30.  In a case in which a debtor obtains legal title using fraudulently obtained funds, the debtor merely holds legal title in "constructive trust for the [owner of the funds] (in whom the equitable title vested) up to the amount of the fraudulently obtained funds." *In re Huie*, No. 07-40627, 2007 Bankr. LEXIS 2614, at *13-14 (Bankr. E.D. Tex. 2007); *see also Deluxe Barber School, LLC v. Nwakor*, 609 S.W.3d 282, 298-99 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("Texas courts have long held that a homestead designation does not protect wrongfully acquired funds or property from foreclosure, because such funds or property are merely held by the acquirer in trust for the true owner; thus, when wrongfully acquired funds are used to purchase real property, no homestead rights can attach to that property").

31.  In this case, LRK holds equitable title in the Property because the Property was obtained using wrongfully obtained funds transferred from Acuity to National Title Group. LRK, as Acuity's assignee, holds rightful equitable title in the Property in the amount of the funds, which

is $1,003,000.12. On May 18, 2022, the Debtor breached his fiduciary duty to Acuity by wrongfully converting these funds and transferring them to National Title Group to purchase the Property in his name. The documentary evidence obtained from impartial third parties conclusively establishes that the funds used to purchase the Property were sent by Acuity directly to National Title Group.

32. Pursuant to the Sale Order and Bill of Sale, LRK is the rightful holder of all assets and claims formerly held by Acuity and its estate. LRK acquired substantially all assets owned by Acuity and its estate free and clear of all liens, claims, and encumbrances. The assets and claims acquired specifically include all rights and claims to the Property, including all of the Acuity Estate's "rights, claims ownership, title, or interest in any property or assets (real, personal, and intangible) that the estate has or may have that is or was under the possession, custody, control, ownership, or title (legal or equitable) of Dana Simpson aka Brent Simpson."[4]

33. Because Acuity's funds were used to purchase the Property and LRK has acquired all assets and claims of Acuity,[5] equitable title of the Property is vested in LRK. *In re Huie*, No. 07-40627, 2007 Bankr. LEXIS 2614, at *13-14 (Bankr. E.D. Tex. 2007) (holding that a debtor did not actually own a home to the extent it was purchased with a creditor's funds and that equitable title is vested in the creditor up to the amount of the funds).

34. LRK therefore requests an order and judgment declaring and finding that LRK holds equitable title in the Property in an amount not less than $1,003,000.12.

**B. Count 2 – Imposition of Constructive Trust.**

35. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

---

[4] Sale Order, p. 8 of 8.
[5] Other than Acuity's interests in Click Vision Group, LLC, which was separately conveyed to BEK-98 LLC.

36. A constructive trust should be imposed over the Property for the benefit of LRK to prevent Simpson's unjust enrichment.

37. Simpson acquired the Property by defrauding Acuity.

38. Simpson's purchase of the Property using Acuity's funds allowed Simpson to retain the Property that unjustly enriched him.

39. Simpson currently possesses the Property, which is rightfully owned by LRK.

40. Allowing Simpson to retain the Property would damage LRK and unjustly enrich Simpson.

C. **Count 3 – Breach of Fiduciary Duty.**

41. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

42. As Acuity's sole owner and manager at the time the Acuity Transfers were made, Simpson owed a fiduciary duty to Acuity.

43. Simpson breached his fiduciary duty to Acuity by wrongfully making the Acuity Transfers to purchase the Property solely for Simpson's personal benefit to the detriment of Acuity.

44. LRK, as the owner of all of Acuity's assets and claims, has been harmed by this breach of fiduciary duty in the amount of the Acuity Transfers.

D. **Count 4 – Avoidance of Actual Fraudulent Transfers – TUFTA § 24.005(a)(1).**

45. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

46. Under Section 24.005(a)(1) of the Texas Business and Commerce Code (the Texas Uniform Fraudulent Transfer Act or "TUFTA"), "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a

reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with the actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1).

47. The Acuity Transfers referenced in paragraph 14 were transfers of Acuity's property.

48. Simpson made the Acuity Transfers with the actual intent to hinder, delay, or defraud creditors of Simpson and Acuity, including Mr. Knapton.

49. Simpson, as the sole owner and person in control of Acuity at the time the Acuity Transfers were made, caused Acuity to make the Acuity Transfers to purchase the Property in Simpson's name with actual intent to hinder, delay, and defraud creditors of Simpson and Acuity, including Mr. Knapton.

50. For these reasons, the Acuity Transfers were actually fraudulent under TUFTA § 24.005(a)(1) and should be avoided.

**E. Count 5 – Avoidance of Constructive Fraudulent Transfer – TUFTA § 24.005(a)(2).**

51. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

52. Under TUFTA section 24.005(a)(2), "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have

believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Tex. Bus. & Com. Code § 24.005(a)(2).

53. The Acuity Transfers referenced in paragraph 14 were transfers of Acuity's property.

54. The Acuity Transfers were made without receiving reasonably equivalent value in return.

55. Simpson, as the sole owner and person in control of Acuity at the time the Acuity Transfers were made, caused Acuity to make the Acuity Transfers to purchase the Property in Simpson's name without providing Acuity any value in return.

56. Further, despite Acuity being insolvent at the time the Acuity Transfers were made, Simpson benefited himself at Acuity's expense for the Acuity Transfers.

57. At the time the Acuity Transfers were made, Acuity was engaged or was about to engage in a business or a transaction for which the remaining assets of Acuity were unreasonably small in relation to the business or transaction. The Acuity Transfers consisted of most of Acuity's remaining assets at the time the transfers were made.

58. At the time the Acuity Transfers were made, Acuity, through Simpson, intended to incur, or believed or reasonably should have believed that Acuity would incur, debts beyond Acuity's ability to pay as they became due.

59. For these reasons, the Acuity Transfers were constructively fraudulent under TUFTA § 24.005(a)(2) and should be avoided.

### F. Count 6 – Recovery of Avoided Transfers - TUFTA § 24.008.

60. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

61. The Acuity Transfers should be avoided and recovered to the extent necessary to satisfy LRK's claims. The Court should also require Simpson to surrender the Property to LRK to satisfy LRK's claims.

**G. Count 7 – Objection to Dischargeability of Debt Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.**

62. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

63. Under section 523(a)(2)(A) of the Bankruptcy Code:

A discharge under section [1141] . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of      credit, to the extent obtained by . . . false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

64. Simpson committed actual fraud on Acuity by wrongfully causing the Acuity Transfers to purchase the Property in his own name. Simpson made the Acuity Transfers with actual intent to hinder, delay, and defraud creditors.

65. As a direct and proximate cause of Simpson's wrongful and fraudulent Acuity Transfers, Acuity suffered injury in the amount of the Acuity Transfers.

66. Therefore, the debt owed to Plaintiff by Simpson is non-dischargeable, as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A). Plaintiff therefore requests a determination by this Court that the debt is non-dischargeable by Simpson.

**H. Count 8 – Objection to Dischargeability of Debt Pursuant to Section 523(a)(4) of the Bankruptcy Code.**

67. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

68. Pursuant to Section 523(a)(4) of the Bankruptcy Code:

> A discharge under section [1141] . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

69. Simpson acted as a fiduciary and/or in a fiduciary capacity with respect to Acuity and Acuity's funds that were used by Simpson to purchase the Property. At all relevant times, Simpson was the manager and sole person in control of Acuity. In that capacity, he had management over and sole access to Acuity's bank accounts. This fiduciary duty encompassed a responsibility not to use Acuity's funds for his own personal benefit to the detriment of Acuity and its lenders, investors, and creditors.

70. While acting in this fiduciary capacity, Simpson committed fraud on Acuity and misappropriated, misused, embezzled, and converted the funds held by Acuity to purchase the Property solely to benefit Simpson. Among other things, Simpson wrongfully assumed and exercised dominion and control over Acuity's funds to the exclusion of and inconsistent with Acuity's ownership rights in the funds. Simpson wrongfully refused Plaintiff's demands for a return of the funds, all to the detriment and damage of Plaintiff.

71. Simpson's misuse and wrongful taking of Acuity's funds to purchase the Property also constitutes embezzlement. Simpson was entrusted with Acuity's funds and fraudulently appropriated the funds for his own benefit.

72. As a direct and proximate cause of Simpson's fraud and defalcation while acting in a fiduciary capacity and his embezzlement, Plaintiff, as Acuity's assignee, has suffered monetary damages in an amount not less than the Acuity Transfers.

73. Therefore, the debt owed to LRK by Simpson should be excepted from discharge pursuant to section 523(a)(4) of the Bankruptcy Code.

### I. Count 9 – Objection to Dischargeability of Debt Pursuant to Section 523(a)(6) of the Bankruptcy Code.

74. LRK repeats and realleges each of the allegations set forth above as if fully stated herein.

75. Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt … (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

76. Simpson willfully and maliciously injured Plaintiff and Plaintiff's property by the actions described of above, including through Simpson's wrongful conversion of Acuity's funds to use for Simpson's own personal benefit.

77. Simpson intended to harm Acuity and its property by fraudulently and wrongfully converting Acuity's funds for his own personal benefit. Simpson fully intended to wrongfully take Acuity's funds and use them for Simpson's own personal benefit to the exclusion of and inconsistent with the Acuity's rights. Simpson knew that it was certain or substantially certain that Acuity and its property would be injured as a result of Simpson's actions. Simpson refused to return Plaintiff's property upon demand.

78. Therefore, the debt owed to LRK by Simpson should be excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

### V. PRAYER

Plaintiff respectfully requests that this Court enter an order and judgment as follows:

    (i) for actual damages in an amount to be proven at trial;

    (ii) avoiding and recovering the Acuity Transfers and/or the value of the Acuity Transfers for the benefit of LRK;

(iii) finding and declaring that LRK holds equitable title in the Property in an amount not less than $1,003,000.12 and imposing a constructive trust over the Property for the benefit of LRK;

(iv) ordering that Simpson transfer the Property to LRK to satisfy LRK's claims;

(v) determining that the debt owed by Simpson to LRK is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and/or 523(a)(6) in an amount not less than $1,003,000.12;

(vi) pre- and post-judgment interest as provided by law; and

(vii) for such other and further relief as LRK may show itself to be justly entitled in law or in equity.

Dated: March 10, 2025                Respectfully submitted,

/s/ H. Brandon Jones
H. Brandon Jones
State Bar I.D. No. 24060043
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6914 telephone
Email: brandon@bondsellis.com
Email: bryan.assink@bondsellis.com

ATTORNEYS FOR PLAINTIFF LRK-96 LLC